UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:12-cv-00219-MOC

| | |
|---|---|
| STEVE A. MCGINNIS, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | ORDER |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment.[1] Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

---

1  Plaintiff has, without leave of court and contrary to the Local Civil Rules, filed a "Response" to the Commissioner's Motion for Summary Judgment. Specifically, Local Civil Rule 7.1 (E) provides in relevant part as follows:

> In an action seeking judicial review of a final administrative decision, the court may enter a Scheduling Order providing for the filing of cross motions for summary judgment or other relief with no responsive or reply briefs allowed. Where such a Scheduling Order is entered, the briefing requirements of Local Civil Rule 7.1(E) are preempted by the requirements of the Scheduling Order. Examples of such actions include, but are not limited to, Social Security disability and Supplemental Security Insurance benefit actions and ERISA claims.

L.Civ.R. 7.1(E). In this case, a Social Security Scheduling Order (#8) was entered providing for the filing cross motions for summary judgment, with no allowance for response or reply briefs. As leave was not granted to file a Response, the Response and Reply will be stricken.

## I. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits, as well as a claim for Supplemental Security Income benefits in 2008, alleging the onset of disability in 2004. Plaintiff's claims were denied initially and plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de*

*novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.  An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

On October 6, 2010, the ALJ issued a decision denying plaintiff's claims for benefits. (Tr. 17-29). At step one, the ALJ determined that plaintiff had worked after his alleged disability onset date of April 1, 2004; despite such finding, the ALJ advanced the inquiry to the next step citing insufficient information to establish that such work constituted substantial gainful activity. (Tr. 19-20 at Finding 2). At step two, the ALJ found that plaintiff suffers from chronic lower

back pain and hemochromatosis and that such constituted "severe impairments." The ALJ also concluded that plaintiff suffered from a number of non-severe impairments, including heart disease, hypertension, and right thumb pain. Finally, he determined that the record was insufficient to determine whether plaintiff also suffered from his other alleged impairments, including liver disease, anxiety, and depression. (Tr. 21-23). At step three, the ALJ found that plaintiff did not have an impairment or a combination of impairments that either met or equaled any impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 23 at Finding 4).

Between the third and fourth steps of the Sequential Evaluation Process, the ALJ assessed plaintiff's residual functional capacity ("RFC"). He determined that plaintiff had the RFC to perform light work, as long as he had the option of sitting or standing and changing positions on an occasional basis; would only occasionally need to bend, stoop, or twist; and, did not engage in any "vigorous, fast-paced work." (Tr. 23-27 at Finding 5).

At the fourth step, the ALJ considered plaintiff's age, education, work background, and RFC, and determined that Plaintiff was unable to perform his past relevant work as a roofer. (Tr. 27 at Finding 6).

At the fifth step, the ALJ determined that plaintiff could perform other jobs that existed in significant numbers in the national economy. (Tr. 27-28 at Finding

10). In conducting such analysis, the ALJ considered the testimony of a vocational expert ("VE"), who was presented with two hypotheticals. Thereafter, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. (Tr. 28 at Finding 11).

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

*I.  Whether the ALJ erred in failing to consider applying the grids early as Mr. McGinnis was within a few months of his 55th birthday when the ALJ issued his decision.*

*II. Whether the ALJ erred as a matter of law in evaluating Mr. McGinnis' subjective complaint in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529 and making a conclusory credibility finding in violation of SSR 96-7p.*

Plaintiff's assignments of error will be discussed *seriatim*.

#### 2. First Assignment of Error

In his first assignment of error, plaintiff contends that the ALJ should have applied the grids early to direct a finding of disabled as plaintiff was within a "few months" of his 55th birthday. It is undisputed that plaintiff was approximately 54 years and 4 months old at the time of the administrative decision, which placed him in the category of "quickly approaching advanced age." At 55, individuals are treated as having attained advanced age. 20 C.F.R. §§ 404.1563(e), 416.963(e).

Plaintiff contends and the court accepts (without deciding) that had the ALJ considered him as having attained advanced age, the grids would have directed a conclusion of "disabled" and that VE testimony could not be considered. See SSR 83-5a (stating that neither the Act nor the regulations authorize an ALJ to rebut a finding of disability directed by the Grids). The record does not support plaintiff's assertion that the ALJ improperly focused on plaintiff's age at the time of alleged onset, as it appears that the ALJ recognized that plaintiff had aged between alleged onset and the hearing, and affirmatively considered plaintiff's age at both points in time. (Tr. 27-28).

Turning to the substantive argument, the regulations provide that the Commissioner must "not apply the age categories mechanically in borderline situations," and, where a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination [of disability]," to "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added).

At the time the written decision issued on October 6, 2010. (Tr. 29), plaintiff was eight-months shy of his 55th birthday, which occurred in June 2011. In determining what is a borderline case, there are "no fixed guidelines as to when a

borderline situation exists," SSR 83-10, 1983 WL 31251, at *8 (1983), other courts which have considered the issue have found that even shorter periods are not a "few days or few months" as provided in the regulation. See Lambert v. Chater, 96 F.3d 479, 470 (10th Cir. 1996) (seven-month shortfall did not constitute borderline situation); Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988) (same). Judges of this court have found a 25-day gap presented a borderline situation. Mitchell v. Astrue, 2011 WL 5037134, at *3 (W.D.N.C. Oct. 24, 2011). The ALJ did not, therefore, err when he considered plaintiff's actual age, 54. This assignment of error is overruled.

### 3. Second Assignment of Error

In his second assignment of error, plaintiff contends that the ALJ erred in considering his subjective complaints by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529 and by making a conclusory credibility finding in violation of SSR 96-7p.

Plaintiff's claim for benefits includes allegations of pain and other subjective complaints. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof,

however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[2]

Step One requires an ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain [or other subjective complaint], in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and

---

[2] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

Here, plaintiff takes particular issue with the ALJ's consideration of plaintiff's own testimony. Plaintiff contends that the ALJ improperly concluded that his "'statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment.'" (Pl. Br. 18 (quoting Tr. 24)). He points to a decision of the Court of Appeals for the Seventh Circuit that use of such boilerplate language is meaningless, as it gives the claimant and reviewing courts "no clue to what weight the trier of fact gave the testimony." Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010). While that is not the law in the Fourth Circuit, plaintiff's point is well taken as this court agrees that such a finding, standing alone, does little to advance the

ball down the field. The law in the Fourth Circuit does, however, require the ALJ to explain credibility determinations, a "duty of explanation."

In <u>Hatcher v. Secretary</u>, 898 F.2d 21 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

<u>Id.</u> at 23 (<u>quoting</u> <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). The ALJ found plaintiff "somewhat credible" (Tr. 26), and accepted some portions of his testimony regarding his impairments, while explaining that certain other allegations could not be fully credited. (Tr. 24-26). The ALJ has fulfilled his duty of explaining why he did not fully credit all of plaintiff's testimony.

First, the ALJ determined that plaintiff's complaints of disabling back pain were not supported by record. (Tr. 24). While plaintiff testified to that he stopped working in 2004 due to back pain that prevented him from bending (Tr. 382), the ALJ found no record of plaintiff seeking treatment for back pain until 2008. (Tr.

24). Such explanation is supported by the Adminsitrative Record. See Tr. 150-59, 246). Equally, the ALJ acknowledged that starting in 2008, medical records supported his allegations to some extent: a March 2008 X-ray showed some disc space narrowing and grade I spondylolisthesis. The ALJ also recognized that plaintiff was taking narcotic pain medication during the period, but determined that the record suggested dependence rather than medical necessity. (Tr. 25). Such determination is also supported by substantial evidence in the Administrative Record. See Tr. 246 (plaintiff's physician noting that plaintiff's back pain had produced "narcotic dependency."). Such physician's notes concerning the physical limitations , or lack thereof, caused by plaintiff's back pain also support the ALJ's determination. Id.

In not fully crediting plaintiff's testimony, the ALJ also noted plaintiff's failure to present at either the physical or psychological consultative examinations scheduled by Disability Determination Services ("DDS"). Apparently, plaintiff failed to attend based on advice of counsel. Plaintiff points to a letter his attorney wrote to DDS, explaining his objection to the physical consultative examination. (Tr. 374). In this letter, plaintiff's counsel objected on the grounds that a treating physician is the "preferred source" for providing information about a claimant's physical condition, pursuant to 20 C.F.R. §§ 404.1519h and 416.919h, and stated

that he intended to seek the necessary information from plaintiff's treating physicians instead. (Tr. 374). This letter was not before the ALJ. (Tr. 371). While a treating physician is "ordinarily" the preferred source to perform an additional examination provided that he is "qualified, equipped, and willing" to do so for the prescribed fee, 20 C.F.R. §§ 404.1519h, 416.919h, this preference is not absolute, and the regulations provide a non-exhaustive list of situations where another source may be consulted, id. §§ 404.1519i, 416.919i. Plaintiff failed, however, to identify which of his treating physicians or mental health professionals were willing to conduct the examination (Tr. 374), and the record is devoid of any evidence that any of his treating doctors ever did conduct any further consultative examination for purposes of evaluating his abilities and limitations. Thus, plaintiff's failure to present at either the physical or psychological consultative examinations, absent plaintiff providing such through a preferred source, was an appropriate reason to call into question plaintiff's testimony, which would have been illuminated by such consultative examinations. It was not, therefore, error for the ALJ to rely on the opinion of state agency psychologist Dr. April Strobel-Nuss, who reviewed the record, and concluded that there was insufficient evidence to determine what, if any, mental impairments Plaintiff had. (Tr. 26, 110-21).

As to the impact caused on maintaining employment based on plaintiff's need for periodic phlebotomies as treatment for hemochromatosis, plaintiff testified that he was required to have phlebotomies "every three months and sometimes repeatedly for three weeks" following each appointment. (Tr. 387-89), The ALJ compared that testimony with the medical evidence, which indicated that such procedures were performed "two to three times per year." (Tr. 270). The ALJ also cited a medical office note indicating that plaintiff had more recently gone six months between such treatments in 2010. (Tr. 26 and 262). The ALJ concluded that even if he fully credited plaintiff's testimony as to several days being required to recovery from such procedures, they did "not occur consistently every month and therefore would not interfere with the ability to sustain a full-time job." (Tr. 25-26). Clearly, the ALJ fully credited plaintiff's claim that such disease and the treatments made him constantly fatigued, and limited him to light-work jobs that did not require "vigorous, fast-paced work." (Tr. 23, 26). The ALJ also did not fully credit plaintiff's contention that he ceased working in 2004 and cited to evidence in the medical record that suggested plaintiff continued to work in subsequent years. (Tr. 20). The Administrative Record contains substantial evidence that supports such conclusion. (Tr. 246, 336).

Clearly, the ALJ has satisfied his "duty of explanation," and such credibility determination is fully supported by substantial evidence in the record.

E.  **Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's motion and brief, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)  the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2)  the plaintiff's Motion for Summary Judgment (#9) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: July 3, 2013

Max O. Cogburn Jr.
United States District Judge